IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES A. PERSEO,

        Plaintiff,

vs.                                                                          Civil No. 07-1021 JP/ RHS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

1.  THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or

Remand Administrative Agency Decision ("Motion"), filed July 13, 2009 **[Doc. No. 22]**.

Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for disability insurance benefits under Title II of the Social

Security Act.  Having considered the parties' submittals, the administrative transcript ("Tr."), the

relevant authorities, and being otherwise advised in the premises, the Court recommends that

Plaintiff's Motion be granted and this matter be remanded for further proceedings.

2.  Plaintiff was born on November 19, 1953 and completed high school and two years of

vocational training in electronics.  (Tr. 660-61).  Plaintiff has worked in the past as a television

and stereo repairman and television dish installer.  (Tr. 55, 66).  Plaintiff testified that he last

worked as a "satellite dish installer" which involved carrying equipment and tools up a ladder to

the roof "and then running the cable from the dish down to the TV set or sets."  (Tr. 661-62).

3. Plaintiff applied for benefits on March 27, 2003, alleging "that he became disabled on

February 15, 2003 due to detached retinas, back pain, and depression."  (Tr. at 16, 17).  Plaintiff

claims that his ability to work was limited because he is "unable to lift more than 5 pounds, [can

do] no ladder work [and his] eyesight [is] limited." (Tr. 65). In a Reconsideration Disability Report dated October 25, 2003, Plaintiff stated that he can do "no heavy lifting, [and] can only stand 1 - 2 hours at a time." (Tr. 94). During a hearing held before an Administrative Law Judge ("ALJ") on December 6, 2004, Plaintiff testified that the condition that limits him most from working is "my back pain." (Tr. 666). Specifically, Plaintiff explained that: "I can't bend forward for any length of time . . . . [and] the longer I stand the further down my leg the pain goes." (Tr. 666).

4.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6.   At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

2

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes, 845 F.2d at 243.

7. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 23 ¶ 2). At step two, the ALJ found that Plaintiff "has medically determinable impairments due to degenerative disc disease of the lumbar spine, degenerative scoliosis of the lumbar spine, L4-5 spinal stenosis, and detached retinas that are 'severe' within the meaning of the Regulations." (Tr. 23 ¶ 3). At step three, the ALJ found that Plaintiff's impairments "do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 [("Listings")]." (Tr. 23 ¶ 4). At step four, the ALJ determined that Plaintiff "is unable to perform any of his past relevant work." (Tr. 24 ¶ 7). Finally, at step five, the ALJ concluded that Plaintiff was not disabled because "there are a significant number of jobs in the national economy that he could perform." (Tr. 24 ¶¶ 12, 13).

8. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in ignoring evidence from Plaintiff's treating spine specialist; (2) the ALJ's credibility determination is not supported by substantial evidence and the ALJ failed to apply correct legal standards in considering Plaintiff's credibility; and (3) the ALJ erred in failing to find that Plaintiff suffered from "severe" depression at step 2. (See Memorandum in Support of Motion ("Memo") at 1, filed Jul. 13, 2009 **[Doc. No. 23]**). The Commissioner filed a response in opposition to Plaintiff's Motion.

## ***Discussion***

3

9.   The record indicates that Plaintiff was first seen by Dr. Michael E. McCutcheon on February 20, 2002 for a complaint of right leg pain at the recommendation of Plaintiff's primary care physician, Dr. Richard Rock.  (Tr. 145, 398).  Among other findings, Dr. McCutcheon noted that Plaintiff walked "with an antalgic gait favoring the right leg," had a "3+ muscle spasm," and was moderately restricted in his lumbar range of motion ("ROM").  (Tr. 399). Following an examination and review of imaging studies (plain films of the lumbar spine and pelvic MRIs), Dr. McCutcheon diagnosed Plaintiff with "acquired degenerative scoliosis, lumbar spine" and "spinal stenosis."  (Tr. 400).  Dr. McCutcheon recommended physical therapy three times a week and a return appointment in two months.  (Tr. 400).

10.   At his follow-up appointment on April 3, 2002, Dr. McCutcheon reported that Plaintiff benefitted from physical therapy and "returns with virtually no pain."  (Tr. 395).  Dr. McCutcheon observed that Plaintiff "still had 1+ muscle spasm[,] but improving range of motion and [a] normal neurologic examination."  (Tr. 395).  Dr. McCutcheon indicated that he would follow Plaintiff on an "as needed" basis.

11.   On September 19, 2003, Plaintiff returned to Dr. McCutcheon "complaining of very bad back and quite bad right leg pain."  (Tr. 388).  Dr. McCutcheon noted that "the pain in [Plaintiff's] back and right leg has forced him to stop working . . . . [and Plaintiff] currently finds that standing, walking, twisting and lifting increase his pain. [Plaintiff] can stand 30 minutes, sit 30 minutes and walk 1/4 mile."  (Tr. 388).

12.   On physical examination, Dr. McCutcheon noted bilateral "3+ muscle spasm," moderately restricted ROM of the lumbar spine and observed that Plaintiff "walks with an antalgic gait favoring the right leg and [that] movement is guarded and stiffly performed."  (Tr. 388).  Dr. McCutcheon indicated that he was "setting the patient up for an L4-5 transforaminal

4

epidural steroid block" and a follow-up appointment.  (Tr. 389).  In addition, Dr. McCutcheon

"filled out disability forms saying that [Plaintiff] is totally disabled."  (Tr. 389).  In an

accompanying "Attending Physician's Statement" form, Dr. McCutcheon opined that Plaintiff's

"pain prevents [him from] climbing, walking, sitting or bending."  (Tr. 393).

13.  The ALJ determined that Dr. McCutcheon's opinions of September 19, 2003 were

not entitled to controlling weight because his "conclusions were based on [Plaintiff's] inaccurate

statements regarding his circumstances."  (Tr. 20).  Specifically, the ALJ noted that:

> [Although Plaintiff] told Dr. McCutcheon . . . that his pain had forced him to stop
> working as a satellite installer . . . . [Plaintiff] made no mention of his alcohol
> problem and gave no indication of the role this might have played in the loss of his
> job.  Thus, Dr. McCutcheon concluded that even though there was no significant
> change in [Plaintiff's] clinical presentation from April 2002, [Plaintiff] had become
> "totally disabled."

(Tr. 20).  There are several problems with this assessment of Dr. McCutcheon's opinions.

14.  As an initial matter, nothing indicates that Dr. McCutcheon concluded that "there

was no significant change in [Plaintiff's] clinical presentation from April 2002" to September

19, 2003.  (Tr. 20).  An ALJ "is required to give controlling weight to the opinion of a treating

physician as long as the opinion is supported by medically acceptable clinical and laboratory

techniques and is not inconsistent with other substantial evidence in the record," and "[w]hen an

ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his

decision."  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted).  In

declining to give Dr. McCutcheon's opinions controlling weight, the ALJ was required to

consider the factors set forth in 20 C.F.R. § 404.1527(d)[1] in determining what weight to assign

---

[1]These factors include: (1) the length of the treatment relationship and the frequency of
examination, (2) the nature and extent of the treatment relationship, (3) the degree to which an
opinion is supported by relevant evidence, (4) consistency of the opinion with the record as a

those opinions.  However, the ALJ did not indicate what weight, if any, was afforded to Dr. McCutcheon's opinions.[2]  Nor is it apparent that Dr. McCutcheon's opinions were considered in light of the factors enumerated in § 404.1527(d).  This was error.

15.  The only reason offered by the ALJ for discounting Dr. McCutcheon's opinions of September 19, 2003 is that Plaintiff "made no mention of his alcohol problem and gave no indication of the role this *might* have played in the loss of his job."  (Tr. 20 (emphasis added)).  This reasoning is undermined, however, because Dr. McCutcheon knew in February of 2002 that Plaintiff "drinks too much alcohol."  (Tr. 398).  As the ALJ notes, the record indicates that Plaintiff was treated on multiple occasions for alcohol detoxification during 2002 and early 2003 and that Plaintiff was concerned he was "having difficulty on the job due to drinking and may be fired."  (Tr. 191).  However, while the record may indicate that Plaintiff's problems during this period resulted primarily from his alcohol abuse, the ALJ only speculates as to the reasons for the loss of Plaintiff's job.

16.  Even if Dr. McCutcheon incorrectly believed that Plaintiff's back pain forced him to stop working in early 2003, Dr. McCutcheon did not rely solely on subjective statements in reaching his conclusions regarding Plaintiff's condition on September 19, 2003.[3]  The record

---

whole, (5) whether the opinion concerns issues related to the medical source's area of specialty, and (6) other factors which tend to support or contradict the opinion.  See § 404.1527(d).

[2]The ALJ did not err in failing to assign any special significance to Dr. McCutcheon's statement that Plaintiff was "totally disabled" because such a statement is not a "medical opinion" that must be evaluated in accordance with the factors set forth in § 404.1527.  See § 404.1527(e).

[3]The rejection of a medical opinion based on speculation that a doctor was unduly swayed by a patient's subjective complaints is a deviation from correct legal standards.  See Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).

shows that Dr. McCutcheon also performed a physical examination and considered Plaintiff's history, clinical findings, MRI and plain films in reaching his conclusions.  (Tr. 389, 393).

17.   Finally, the ALJ found that the opinions of a consulting physician, Najeeb Ghaussy, M.D. who examined Plaintiff on February 7, 2004, were "entitled to great weight."  (Tr. 20-21). After discussing the history of Plaintiff's back pain, Dr. Ghaussy specifically noted that "[n]o documented evidence or radiological evidence [is available to me] at this time."  (Tr. 438).  In a section entitled "Diagnostic Studies," Dr. Ghaussy again noted that "[n]o imaging studies [are] available to me."  (Tr. 439).  In a section entitled "Diagnostic Impressions," Dr. Ghaussy indicated that Plaintiff has "allegations of" back pain and "reported L5 pinch [sic] nerve.  I have no radiological evidence at this time."  (Tr. 439).  The Court is puzzled as to why Plaintiff, with his allegations of disabling back impairments, was referred for a consultative evaluation without any of the available imaging studies (e.g., MRIs, plain films, etc.) being provided to the examining physician.

18.   For the reasons set forth above, the Court recommends that this matter be remanded for a re-assessment of the medical opinion evidence in this case.  Because this matter should be remanded for further proceedings, there is no need to address Plaintiff's remaining allegations. On remand, the Commissioner should proceed as necessary, based on the receipt of additional evidence and the re-assessment of the evidence.

19.   Finally, in recommending that this matter be remanded, the Court does not intend to direct any particular result with respect to the Commissioner's ultimate determination on the issue of whether Plaintiff is disabled.  On remand, the Court emphasizes only that substantial evidence must support the Commissioner's findings and the correct legal standards must be applied in reaching a decision.

**Recommendation**

It is respectfully recommended that Plaintiff's Motion to Reverse or Remand Agency Decision **[Doc. No. 22]** be **granted** and this matter **remanded** to the Commissioner for additional proceedings consistent with this opinion, to include a re-assessment of the medical opinion evidence.  Timely objections to this report and recommendation may be made pursuant to 28 U.S.C. § 636(b)(1)(C).


_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE